

FILED

FEB 15 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT          Feb 15, 2023
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Violations: Title 18, United |
| | ) | States Code, Section 1343 |
| TE DORA BROWN, and | ) | |
| CHRISTOPHER SCOTT | ) | |

## COUNT ONE

The SPECIAL OCTOBER 2022 GRAND JURY charges:

1.      At times material to this Indictment:

### *The Small Business Administration*

a.      The U.S. Small Business Administration ("SBA") was a United States government agency that provided economic support to small businesses.

### *The Paycheck Protection Program*

b.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c.      One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called

1

the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

d.     To obtain a PPP loan, a business, sole proprietor, or self-employed individual submitted a PPP loan application, which was signed by the applicant or an authorized representative of the business. The PPP loan application required the applicants to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, proprietorship, or individual. In the application, businesses, sole proprietors, and self-employed individuals were required to provide, among other things, their number of employees and average monthly payroll. This figure was used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were also required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations.

e.     PPP loan proceeds were required to be used by the sole proprietorship, self-employed individual, or business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA if the sole proprietorship, self-employed individual, or business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

f.     To gain access to funds through the PPP, businesses, sole proprietorships, and self-employed individuals applied to financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

g.     Businesses, sole proprietors, and self-employed individuals that obtained PPP loans and used the full loan amount were allowed to obtain additional funds through the PPP by submitting a Second Draw Borrower Application Form ("Second Draw Application"), which was signed by the applicant or an authorized representative of the business. The Second Draw Application required the applicants to again acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the business, and again provide their number of employees and average monthly payroll. These figures were again used to calculate the applicant's eligibility and the amount of money the business could receive under the PPP. Applicants were again required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations and that the applicants had used the full amount of the initial PPP loan only for eligible expenses.

h.     Participating lenders required applicants for PPP loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's payroll,

income, operating expenses, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

### The Economic Injury Disaster Loan Program

i.      Another source of relief provided by the CARES Act and other pandemic relief legislation was the expansion of the Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities. The EIDL Program was designed to provide economic relief to small businesses that are experiencing a temporary loss of revenue.

j.      To gain access to funds through the EIDL Program, small businesses applied through the SBA via an online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information about the applying entity and its owner, and its condition prior to the COVID-19 pandemic. This information included the entity's number of employees as of January 31, 2020; the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; rental losses incurred "due to the disaster" (as of January 31, 2020); the entity's type of business (*i.e.*, a business, an agricultural business, a sole proprietorship, or a cooperative, among others); the date on which the business opened; and the date on which the current owner assumed ownership of the entity. Applicants were required to electronically certify that the information provided in the application was true and correct and were warned that any false

4

statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

k.      EIDL funds were issued to the small business applicants directly from the United States Treasury.

l.      EIDL Advance was a grant program offered together with the EIDL program. EIDL Advance was designed to provide emergency economic relief to businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. The applicant could request consideration for an EIDL advance in an application for an EIDL loan. The amount of the advance issued to the small business applicant was determined by the number of employees indicated on the EIDL application, $1,000 per employee, up to $10,000. If an EIDL advance was issued, the advance did not need to be repaid.

m.      If the application was approved by the SBA, the amount of the EIDL loan was determined in part based on the statements in the EIDL application about the entity's revenues and cost of goods sold for the 12 months prior to January 31, 2020.

n.      EIDL Program funds could be used to pay for the ordinary operating expenses and debts of the entity, including payroll, sick leave, production costs, utilities, rent, and mortgage payments.

### *Employer Identification Numbers*

o.     An Employer Identification Number (EIN) is a unique number assigned to business entities by the Internal Revenue Service, upon request from the owner or operator of the business, and is used to identify a business entity for tax administration purposes. Entities that have one or more employees are required to obtain an EIN.

### *Lenders*

p.     Bank A was a financial institution that funded PPP loans to approved borrowers. Bank A maintained computer servers that were located outside of Illinois.

### *The Scheme to Defraud*

2.     Beginning on or about March 30, 2020, and continuing until at least March 10, 2021 at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> TE DORA BROWN, and
> CHRISTOPHER SCOTT

defendants herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PPP and EIDL funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3.     It was part of the scheme that BROWN and SCOTT (together, the "defendants"), for the purpose of fraudulently obtaining approximately $742,500 in

PPP and EIDL funds, submitted approximately 15 applications for loans and advances under the PPP and EIDL Programs, on behalf of businesses and entities purportedly owned and operated by the defendants, including Little Shepherd's Academy, Inc.; Little Shepherd's Beginners, Inc.; EZ Link Golf LLC; Naper Montessori Academy, Inc.; and OLG Financing, Inc. (together, the "Fictitious Entities"); which applications contained materially false statements and misrepresentations concerning, among other things, the purported entities' number of employees, gross revenues, payroll, operating expenses, type of business, and existence as companies with ongoing operations.

### The PPP Loans

4.      It was further part of the scheme that BROWN and SCOTT prepared, and submitted to Bank A, PPP loan applications on behalf of the Fictitious Entities, in which applications BROWN and SCOTT falsely and fraudulently represented that the Fictitious Entities were S Corporations or Limited Liability Companies ("LLCs") that employed specified numbers of employees and had specified average monthly payrolls and that all PPP loan proceeds would be used only for business related purposes. BROWN and SCOTT knew at the time that the Fictitious Entities had no employees or payroll, and that they intended to use the loan funds for their personal use and benefit.

5.      It was further part of the scheme that, to substantiate the claimed number of employees and payroll of the Fictitious Entities, BROWN and SCOTT

prepared and submitted to Bank A copies of false IRS Form 941 filings that fraudulently represented that the Fictitious Entities had paid specified numbers of employees various amounts in wages, tips, and other compensation in tax years 2019 and 2020, and that the IRS had assigned each Fictitious Entity an EIN. BROWN and SCOTT knew at the time that the Fictitious Entities had no employees or payroll, and that the IRS had not assigned an EIN to any of the Fictitious Entities.

6.    It was further part of the scheme that, between on or about January 22, 2021, and on or about March 9, 2021, BROWN and SCOTT prepared, and submitted to Bank A, several Second Draw PPP Applications on behalf of the Fictitious Entities, in which applications BROWN and SCOTT again falsely and fraudulently represented that the Fictitious Entities were S Corporations or LLCs that employed specified numbers of employees and had specified average monthly payrolls, that all PPP loan proceeds would be used only for business related purposes, and that they had used the full amount of the initial PPP loans awarded to each Fictitious Entity only for business related purposes. BROWN and SCOTT knew at the time that the Fictitious Entities had no employees or payroll, that they intended to use the Second Draw loan funds for their personal use and benefit, and that they had used the proceeds of the initial PPP loans for their personal use and benefit.

7.    It was further part of the scheme that BROWN and SCOTT opened business bank accounts in the names of several of the Fictitious Entities, including including Little Shepherd's Academy, Little Shepherd's Beginners, EZ Link Golf

LLC, Naper Montessori Academy, and OLG Financing; and directed Bank A to deposit the proceeds of fraudulently obtained PPP loans into those bank accounts, which the defendants controlled. BROWN and SCOTT opened these accounts in the names of those entities to induce the SBA, Bank A, and others to falsely believe that the accounts belonged to a legitimate and operational business.

8.      It was further part of the scheme that, through the submission of the false and fraudulent PPP loan applications, BROWN and SCOTT caused Bank A to disburse approximately $465,500 in PPP loan proceeds into bank accounts that they controlled.

9.      It was further part of the scheme that BROWN and SCOTT used the PPP funds that Bank A disbursed based on the fraudulent PPP applications to make cash withdrawals, to write checks to themselves and to each other and to entities they controlled, to obtain cashier's checks payable to each other, and to purchase goods and services, all for their personal use and benefit.

### The EIDL Loans

10.      It was further part of the scheme that BROWN and SCOTT prepared, and submitted to the SBA, numerous EIDL loan applications on behalf of several of the Fictitious Entities, including Little Shepherd's Academy, Little Shepherd's Beginners, Naper Montessori Academy, and OLG Financing, in which applications they made false statements regarding their ownership of those entities, the dates on which those entities opened for business, the entities' gross revenues and costs of

9

goods sold for the 12 months prior to January 31, 2020, the number of employees employed by those entities as of January 31, 2020, and the entities' rental losses "due to the disaster" (as of January 31, 2020). BROWN and SCOTT knew at the time that the Fictitious Entities were not operating companies, had no employees, and did not have the revenues or cost of goods stated in the applications.

11.     It was further part of the scheme that BROWN and SCOTT opened business bank accounts in the names of several of the Fictitious Entities, including including Little Shepherd's Academy, Little Shepherd's Beginners, Naper Montessori Academy, and OLG Financing; and directed the SBA to deposit the proceeds of fraudulently obtained EIDL loans into those bank accounts, which the defendants controlled. BROWN and SCOTT opened these accounts in the names of those entities to induce the SBA and others to falsely believe that the accounts belonged to a legitimate and operational business.

12.     It was further part of the scheme that, through the submission of the false and fraudulent EIDL loan applications, BROWN and SCOTT caused the SBA to disburse approximately $277,000 in EIDL loan proceeds and advances into bank accounts that they controlled.

13.     It was further part of the scheme that BROWN and SCOTT used the funds that had been disbursed by the SBA based on the fraudulent EIDL applications to make cash withdrawals, to write checks to themselves and to each other and to entities they controlled, to obtain cashier's checks payable to each other, and to

purchase goods and services, all for their personal use and benefit, and not to pay for the ordinary operating expenses and debts of the applying entities.

14. It was further part of the scheme that BROWN and SCOTT misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

15. On or about March 30, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of an EIDL loan application on behalf of "Little Shepherd's Academy, Inc.," through an SBA server located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL October 2022 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count One are incorporated here.

2.     On or about May 4, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "Little Shepherd's Academy, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.      On or about May 13, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TE DORA BROWN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "Little Shepherd's Beginners, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.     On or about June 8, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TE DORA BROWN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of an EIDL loan application on behalf of "Little Shepherd's Beginners, Inc." through an SBA server located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2. On or about June 10, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHRISTOPHER SCOTT,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "EZ Link Golf LLC," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.　　Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.　　On or about June 27, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN and
CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of an EIDL loan application on behalf of "OLG Financing, Inc.," through an SBA server located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.      On or about June 28, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN and
CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "OLG Financing, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

**COUNT EIGHT**

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.  Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.  On or about July 8, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> TE DORA BROWN and
> CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "Naper Montessori Academy, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.    On or about July 14, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN and
CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of an EIDL loan application on behalf of "Naper Montessori Academy, Inc.," through an SBA server located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.    On or about July 30, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN and
CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "OLG Financing, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT ELEVEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2. On or about January 22, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TE DORA BROWN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "Little Shepherd's Academy, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWELVE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.     On or about January 22, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### TE DORA BROWN,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "Little Shepherd's Beginners, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THIRTEEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.      On or about January 22, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> TE DORA BROWN and
> CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "OLG Financing, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOURTEEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2. On or about February 19, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TE DORA BROWN and
CHRISTOPHER SCOTT,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "Naper Montessori Academy, Inc.," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIFTEEN

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1.    Paragraphs 1 through 14 of Count One are realleged and incorporated here.

2.    On or about March 9, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHRISTOPHER SCOTT,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, and sounds, namely, an internet transmission of a PPP loan application on behalf of "EZ Link Golf LLC," to Bank A's computer servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL OCTOBER 2022 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes, but is not limited to a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343, estimated to be approximately $742,600.

3.     If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the

United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____
FOREPERSON


_____
Signed by Erika L. Csicsila, on behalf of the
UNITED STATES ATTORNEY